Good morning, Your Honors. My name is Patricia Bangert, and I represent the appellants in the case, and I'm here with Cletus Cole, Earline Bearcrain Cole, and sitting in the back, because she's a little shy, is Precious Bearcrain. Welcome everybody. Thank you, Your Honor. All right. I'd like to reserve, start off by reserving three minutes for rebuttal, Your Honor. And we are here today primarily to ask the court to reverse the district court's finding that the appellants do not have personal standing or individual standing to sue the FBI and Agent Oravec. The district court also found that the Bearcrain family failed to state a cause of action against the FBI and found against the appellants on treaty issues and substantive due process. I'm going to argue or posit that if the court does find standing, it should send those issues back to the district court. The district court specifically found that, or specifically after finding that, the plaintiffs did not have individual standing. So if we were to, and this is we're dealing hypothetically, that obviously we're here to ask questions, and assuming we were to find that they have standing to bring a claim against Agent Oravec, does that have to be remanded to the district court to determine whether he's entitled to qualified immunity? Absolutely, Your Honor. I think all the issues, all the other issues have to be remanded to the district court. The district court specifically looked at the issues of failure to state a claim, treaty, and substantive due process in the context of the plaintiffs suing in a representative capacity. I have a question about the victim statutes that you allege. Yes, Your Honor. And, okay, with respect to your claim that defendants' failure to adequately investigate Mr. Bearcrane's death denied you benefits under the victim's rights statutes, does your complaint allege that your injury is the denial of benefits or the denial of the opportunity to receive benefits? It's absolutely the latter, Your Honor. Under a Bakke type of theory, the claim is not that the plaintiffs below should have gotten the benefits, but it's the, the gravamen of the complaint is the denial of access, the creation of a barrier. Well, yeah, I think you, I think there was some argument on the standing that was trying to say, okay, if it was something for, like, minority contracts or something that, but I don't consider this exactly the same type of thing because there's a speculative nature to whether you would ever get the benefits at the end of it. So isn't, I mean, it has to be, you know, for, for Article III standing, there needs, it can't be a totally speculative injury. So can you respond to that? Yes, Your Honor. I'd refer the Court to cases such as Bakke and Northeastern Florida Chapter general contractors. And in those cases, the Court said that the injury was the barrier to the services, not the denial of services themselves. The, and specifically, the government cannot set up barriers for certain classes of people to services that might otherwise be available to them. The Court said in Bakke that Bakke may not get into med school, but that's irrelevant. The, the gravamen of the complaint was the denial of access, the denial of his ability to compete. So turning, if, if that sufficiently answers your question, Your Honor, turning to the issue of harm, and I, I think that's really at the center of the standing issue. The, the district court defined the harm as a failure to investigate some specific deaths. That's not the harm. The harm here is the racial classification, the, the psychological, sociological, and economic impacts of the, the illegal racial classification. That is, the FBI has a, a pattern and practice of providing less law enforcement services to Native Americans living on, on reservations than to other citizens. And that harm or, or that injury leads to very specific impacts for the, the appellants. And going into a little bit more detail, psychological harm would include merely the, the, or include the stigma of a racial classification that was recognized in so many cases. In Brown, in, I'm sorry. But you're, you're, I think we are familiar with those cases, but just so I understand, the individual defendant acted in ways that you allege are discriminatory and it affected his investigation. Yes, Your Honor. And then you also sued the, I guess it's properly the Billings Office and the FBI for its pattern and practice. So you're saying that both the entity, the FBI, and the individual agent are liable for this, guilty of this bias. As to the larger group, that is the institution, you're relying on national statistics, as I gather. What is your proof of the, of your allegation, I should say, about the FBI's pattern and practice? What we've, we've said in the complaint, Your Honor, or what we've tried to establish is a sort of cascading proof. And specifically, that there is an acknowledgement from a number of folks, including a senator and the Congress in the Tribal Law and Order Act, that there is less law enforcement on than in other communities. Then, going more specific, we have testimony from the chair of the Fort Hall Business Council. Fort Hall, the Fort Hall reservation is in Idaho within the jurisdiction of the Salt Lake City office. Then, Your Honor, getting even more specific, we argue that there are numerous instances on the Crow Reservation of unequal enforcement of the law. So, what we're doing is trying to show, not through some national statistics that there's this pattern and practice, but through a cascading series of proofs in the, in the complaint, Your Honor. And you're saying Salt Lake City, but I thought this was Billings. Um, the, the complaint is actually styled FBI office, Salt Lake City. I know. And their argument, I thought there was some confusion, but that was deliberate? I, yes, Your Honor. The, it's styled Salt Lake City, but we're saying that many of the specific instances occurred on the Crow Reservation. Through the Billings office? Out of the Billings office, yes, Your Honor. Yeah, yeah. So, my understanding is the equal protection claim got knocked out on the, on, on motion to dismiss. Is that correct? Yes and no, Your Honor. What do you mean yes and no? Either, either it was dismissed on motion to dismiss or it wasn't. Well, the equal protection claim against the FBI was knocked out. The equal protection claim against Agent Orovick was not knocked out. That remained. And what we're talking about now, I should clarify, is the 2010 finding of the magistrate as adopted by the, the court. And she said, she found a failure to state a claim on behalf of the FBI because of the pattern in practice, because of an alleged failure to show a pattern in practice. But maintain the claim against Agent Orovick. I, I know it's confusing. So you're asking us to, on the motion to dismiss stage against the FBI to reverse that? Yes, Your Honor. Yes. Well, I'm actually saying that, that may not properly be in front of this court because the, the district court found that there was a failure to state a claim against the FBI within the context of the appellants serving as personal representatives. What we're asking, obviously, here is that the court find that the appellants have individual standing. Yes, Your Honor. So the analysis may change. So if this was a claim against the FBI and against Orovick. Absolutely. Yes, Your Honor. Yeah. So I know you didn't want, you, you, you're suggested at the outset that if you prevail on standing, everything else should go back to the district court? Yes, Your Honor. In their individual claims? Yeah. Yeah. I, I'm saying it's, it's more appropriate to go back to the district court for an analysis of the claims as brought by the appellants in their individual capacities. Okay. So if you, if you, if you don't win here, what's left? If we don't win here, Your Honor, then a petition for cert to the Supreme Court. There, there is nothing left. Yeah. I guess I'd like to, to turn. Sure. I'm sorry. Do you want to save some time? You're going to save some time? You want to address, you have something else you want to do? Oh, the only thing I also wanted to mention here was the, the generalized harm finding or the, the district court's finding that this was too generalized harm. And we think that that really, she, she mischaracterized that theory. The fact that a harm or an injury is done to a large group of people, a certain class of minorities, does not deprive a specific individual from bringing a suit. And I, I guess I'm arguing that this is more akin to the, the redistricting cases than anything else. And in the redistricting, sorry, cases, the court found that just because everybody in the district had been affected by the gerrymandering of the district, it didn't preclude an individual living in the district from bringing suit. Thank you, Your Honor. Good morning. May it please the Court. My name is Kelly Heydrich. And with my colleague, Jim Bartolatto, I represent the Appellees in this case, the Federal Bureau of Investigation, and Agent Matthew Orovec. Your Honor, it seems to us that there are three main issues on appeal here, all of which were decided correctly by the district court below in its 2010 and 2014 opinions, which for clarity's sake, I will simply refer to as the first and second opinions. The first, the district court correctly found that the Bear Crane family lacks standing to of their own personal constitutional rights. Second, that neither the estate nor the family stated a claim for violation of their substantive due process or equal protection rights. And third, that Agent Orovec is entitled to qualified immunity as to any damages claimed by either the estate or the family because his actions did not violate any clearly established constitutional right and because he conducted a reasonable investigation into Mr. Bear Crane's death. Well, did the district court didn't really address the theory of qualified immunity that you now present on Agent Orovec? So don't we need to remand to afford the district court the opportunity to address this issue and make factual findings? Your Honor, as to Agent Orovec, the district court found that he was entitled to qualified immunity under the principle articulated in Guyton. Obviously, the only question before the court at that particular time was whether the estate had a claim, a personal liability claim against Agent Orovec for violations of his rights. Clearly under Guyton, he did not. The court never reached the question of whether the family had a claim against Agent Orovec for damages for violations of their own constitutional rights. So if they don't have standing, then that's the end of it? Yes, Your Honor. But if they do have standing, you're saying for this court to address qualified immunity, even though it's on a different theory than was originally articulated? Your Honor, even if they do have standing to bring a claim against Agent Orovec for violations of their own constitutional rights, qualified immunity would still attach. And obviously, this court could affirm the district court's ruling that the family members could not bring a claim against Agent Orovec for damages on any ground. We believe that the standing ground is obviously correctly decided. We also believe that regardless of the issue of standing, qualified immunity would attach, and it would not be appropriate. What's the qualified immunity? What's not clearly established? How would you frame the issue? As to the family member claims, it has not been clearly established that a family member of a crime victim, their own constitutional rights can be violated by some unequal or unconstitutional provision of law enforcement services to the direct victim. This would be an expansion of the right to sue to essentially an entirely new class. So he might know that he violated the victim's constitutional rights in his actions, but he wouldn't know that he could be sued by the family? That's the issue? In this instance, Your Honor, of course, we don't believe that he could have known he was violating anybody's constitutional rights because all of the actions took place in the investigation after Mr. Bear Crane's death. They're simply the contours of the right to equal protection of law enforcement services, as the Supreme Court recently held in White, has to be narrowly defined and particularly defined if it's to give rise to Bivens liability. Yes, and that's what I and your formulation in response to my question, how you would meet that standard, you said the issue was whether he wouldn't have known that the family could sue him for his unconstitutional actions. I think our argument is that under the current state of the law, no reasonable officer could know that their actions during an investigation could amount to an equal protection violation to some other third party. They may take all actions that they believe are reasonable with regard to the investigation, but how are they to know what is reasonable or not reasonable? Tell me how you're defining the right, in that we're always cautioned, don't define it too generally. How are you defining the right that was not clearly established? As the family member claims, we believe that the constitutional right at issue is whether or not a third party has an equal protection right to provision of law enforcement services in an investigation of a crime against a third party. There simply is no case law addressing that point, nothing expanding it to this new class of victim's plaintiffs, and we believe it would be inappropriate in this case. I asked... That whole argument that has not been thoroughly vetted by the district court. No, Your Honor, the district court did not reach that argument. Right, it hasn't been vetted out. Correct, Your Honor. I asked counsel for the bear cranes about the benefits under the victim's rights statutes. I'd like to similarly ask you, do the bear cranes need to show that they were otherwise entitled to receive benefits under the victim's rights statutes to have standing to bring an equal protection claim, or is it enough that they were denied the opportunity to seek benefits under those statutes? Your Honor, in this instance, I'm not sure that that's not a distinction without a difference. If you look at the specific rights that are provided by these statutes, most of them are hinged on the bringing of a criminal case against a defendant. Right, the problem here is that no criminal case was brought. Yes, Your Honor. But a criminal case, of course, that decision is made by the prosecutor or grand jury, not the investigator. So it would be speculative in any event. Well, they're claiming they may fail on the merits. I mean, assuming they get away from... Assuming they get around qualified immunity in some way. But if they're standing, why would... I mean, doesn't that just go to the merits? As to the crime victim statutes, Your Honor? Yeah. No, Your Honor, because the crime victim statutes, again, they provide these specific services which are only relevant under other specific circumstances to victims of a crime or, in some circumstances, a representative or a successor of a victim of a crime. In order to access those services, first, it's speculative that any of those services would ever have been available. And it's not a concrete injury... Well, the predicate, though, was that there had to be victims of a crime. I'm sorry, Your Honor. There had to be victims of a crime. The statutes provide benefits, potential benefits, to victims of a crime. Right. But most of these are... Here, it was determined that he was not a self-defense. It was not a... Wasn't it? Yes, Your Honor. Okay. I guess when you analyze the standing on that, I think that appellants would analyze standing under, say, the Carroll Court described Northeastern Florida as requiring that the plaintiff demonstrate that it is able and ready to bid on contracts and that discriminatory policy presents that it is ready and able and prevents it from doing so on an equal basis. So is that how we analyze standing? Or do we analyze standing in a more traditional way, say, for example, like Lujan versus Defenders, where a party has standing only if he shows that he has suffered an injury in fact? Your Honor, we believe that standing should be addressed under normal standing principles here, at least in part because the statutes, the crime victim statutes we're referring to, don't themselves give rise to any sort of cause of action for their violation. And again, many of the rights therein are not tangible benefits, but rights... I mean, I understood the plaintiff's standing argument just as counsel argued it. They're concerned, they allege that you, that under all the circumstances that they allege it, you've created a barrier to them even accessing these benefits. And that's the harm. I mean, she appropriately cites to Bakke and other similar cases. Your Honor, but I think we don't agree that there was any sort of barrier created to prevent the family members from accessing any rights to which they would otherwise have been entitled. There's no, for instance, there's no evidence in the record that they ever sought any particular benefits under these statutes. There's no specific benefit that they're talking, that they are referring to when they say they were denied the opportunity to access it. And of course, many of the benefits would run only to Mr. Bearcrane himself or would run to, in the instance of... Well, so is there, is there argument, as you understand it, if a proper investigation had been done, then the prosecutors would have charged and then they would have had access? Yes, Your Honor, I believe that was the most likely way to play out access to benefits under the statute. So why is that not concrete and particularized and why is it not conjectural or hypothetical? Why, where, where are you finding the flaw in that argument? Because it's purely speculative that they ever would have had any right to access any, any particular benefits under the statute. And we can't really point to any actions that Agent Orovec took that put a barrier in their way. Again, they could have applied for benefits under these statutes, some of them. Some of them rely on the bringing of a criminal case and some don't. We don't know that they did that. So to simply say, because the investigation wasn't done well enough, we were denied a particular right to access undefined benefits under some statutes, it's too speculative an injury, we believe, to confidential identity. What about against the FBI, the office, a broader claim? As to the Prembecum statutes? Well, I mean, their whole theory, so they, their, their theory, one of their theories is directly against the individual officer, correct? Yes, Your Honor. All right, let's drop that out for a minute. So they have this broader allegation against the FBI that they just don't, they just provide an, an inadequate level of, of police and investigation services and all that goes with it. And they, and their claim, and their standing claim for that is though that inadequate level of service constitutes a barrier across the board for adequately accessing, that precludes them from accessing these kind of benefits. But again, Your Honor, for standing purposes, we need some sort of concrete particularized injury that the court would be able to, to redress. Obviously, any claim against the FBI would have to be for a declaratory injunctive relief, as the damages claim could run only towards Agent Orovec. If the injury that's being claimed here is that there's generally an unequal provision of law enforcement services, or that had things been different, they might have been able to apply for benefits under some federal statutes, I don't believe that that is the sort of harm in the past that the court could redress through some sort of declaratory judgment that would be prospective in nature. Again, there's, there's no argument here. I don't believe there could be an argument here that there is any imminent danger, any particular injury, or any injury that is likely to be repeated for standing purposes. Let's assume they have standing. What happens in a skip over qualified immunity? Well, Your Honor, if, if appellants, even if the appellants do have standing to bring claims against the FBI Orovec, we still believe the district court's decision should be affirmed because they correctly held that the complaint failed to state a claim for either equal protection or substantive due process violations, as well as the treaty violations. As to equal protection claim brought by the family members, the district court was correct. The complaint simply did not contain any non-conclusory factual allegations that could show that the FBI deliberately discriminated against these plaintiffs in their provision of law enforcement services on the reservation. The only factual allegations in the complaint simply concern generally higher crime rates on the reservations. And to state an equal protection claim, of course, we have to plausibly be able to infer from the factual allegations both a disparate impact and a discriminatory intent. So they have the national statistics and they've got, they've alleged the statements of legislators. And then they bring it down to the billing's office, citing Orovec himself, his own statements. And then they, the ratification, if you will, by the office of his actions after the Bear Cranes actually complained about it. So why isn't that sufficient to allege a failure on their part as part of this overall disparity that's evident across the country? Because none of the, none of the allegations in the complaint that you just referred to actually show or could plausibly infer a discriminatory intent on the part of the FBI. For instance, the statements of legislators or persons who are not in the FBI or not decision makers in the FBI certainly can't be used to show that the FBI itself has a discriminatory intent when it's providing law enforcement services on the reservation. Further, simply the fact that there may be higher crime rates on the reservation, that can't be fairly linked, at least for purposes of stating a claim here, I think, to the specific actions of the FBI. As the appellants themselves acknowledge in their brief, there are a lot of factors that can lead to higher crime rates. Well, what would be the kind of facts that you would say would have to be alleged in order to state a claim? For instance, Your Honor, if the appellants could point to other cases, comparator cases, where, for instance, a similar crime was committed on the reservation in off and they could show that different investigations had been conducted or different resources had been allocated, I think from those sorts of facts, in some circumstances, you could argue that it could show a disparate impact in discriminatory intent. We don't have any of that here. All we have is a vacuum. In a vacuum, the allegations that there's a lot of crime on the reservations and that the FBI must be responsible for it because they're a law enforcement organization. Of course, they're not the only law enforcement organization on the reservation, and they certainly do not have jurisdiction over every crime that occurs. Further, the relief that they're seeking here, again, the injunctive relief, it's not clear exactly what they're asking the court to do. The court obviously is not going to direct the FBI to allocate services differently. They're not asking for specific things like some more officers. So under those circumstances, we don't think that they have managed to state a claim for equal protection on behalf of the family members based on the allegations in the complaint. But then they have a substantive due process claim as well. Yes, Your Honor. I see my time's up. Shall I? Go ahead. Just finish up. So the complaint we believe the district court correctly held also failed to state substantive due process claim against the FBI because as a general principle of law, private violence cannot give rise to a substantive due process claim unless there's a custodial relationship between the victim and the agency or a government agent takes some sort of affirmative act to place the victim in harm's way of an injury that they would not otherwise have faced. Here, the family members don't claim any affirmative act taken by either the FBI or Agent Orovec. They don't claim that they themselves have ever been a victim of a crime, any specific crime. They only allege that they're generally at greater risk because of where they live. Nor do we believe, as we argue in our brief, that the relationship between the Crow tribe and the United States government is the custodial relationship that is referred to in any of these cases. Thank you, Your Honor. Okay. Thank you, counsel. Is there some time for rebuttal? Thank you, Your Honor. Just a couple things. Maybe you want to address what is your best argument that you're more specific than that there's a high crime rate? You know, what, you know? Again, Your Honor, this is a racial classification in which the FBI has a pattern in practice of providing less law enforcement services. But what if there's more crime? Okay. And people are just committing more. How is that? How is just that there's a high crime rate, how does that get you where you need to get? What specificity do you have? What's your most specific allegations? You heard what the government said. I'd like you to respond to that. The most specific allegations, Your Honor, come from the testimony of the Fort Hall business chair saying the status of law enforcement has resulted in much higher crime. We have the Tribal Law and Order Act, which says that there are like 3,000 agents to monitor. How do you link that the FBI is making people commit more crime? Oh, we're certainly not saying it's making. We're saying it allows. As the court said in Elliott Park, it goes, it's beyond dispute that if you don't enforce the criminal laws, then crime is going to rise. We also have the statement of Senator Barrasso saying the low level of law enforcement is so much less than any place else on Indian reservations and that that causes increased crime. So what about Chicago? How do you compare to Chicago? I mean, comparing on the news about- Oh, it's higher, Your Honor. My understanding is the rate of crime is higher on reservations than it is in Chicago. You also allege, I notice on paragraph 24A of your complaint, that between 2004 and 2007, the U.S. declined to prosecute 62% of Indian country criminal cases referred to federal prosecutors. And that certainly is a factor in a higher crime rate. But the primary federal agency that's in charge of major crimes, in charge of investigating, and the FBI website says that their mission is to detect and investigate crime. That major agency is simply failing in many, many respects to detect and investigate crime, which comes back to the Crime Victims Act. And that is, if you don't detect and investigate crimes, then that's a barrier. And you don't find crime, then that's a barrier to even getting to the Victims Rights Acts, Your Honor. And also, I guess I would add there that the complaint alleges that Defendant Orevic actually interfered with the plaintiffs below getting any kind of assistance, specifically that he told the Office of Victims Assistance, don't talk to them. Any sort of victims assistance had to come through him. He wouldn't allow them even to talk to the bear cranes. So we're alleging, again, that he created a barrier specifically, Orevic created a specific barrier, and that the FBI created a general barrier to the Victims Crimes Acts. Also, I guess, on qualified immunity, I just want to mention again, what the government is asking is that the Court affirm a ruling that's not even before the Court, affirm the summary judgment ruling in the 2013 findings. And what's before the Court is the 2010 finding. And on that regard, or in that regard, we would certainly say that the right to equal provision of law enforcement services is clearly established. And unlike the case in — unlike Elliott Park, here you have an agent who is alleged to have destroyed evidence, specifically interfered with investigations, doing less investigation or a less adequate investigation than would normally be done. And we think that would clearly come within. A reasonable officer would clearly have known. Thank you, Your Honor. Thank you, Counsel. Thank you. We appreciate your arguments today. Thank you. And just in case, and the matter is submitted. Thank you.
judges: Fisher, Paez, Callahan